IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN HARRIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
|   Acting Commissioner of the | : | NO. 14-4444 |
|   Social Security Administration | : | |

### REPORT AND RECOMMENDATION

M. FAITH ANGELL                                                                                    October 27, 2015
UNITED STATES MAGISTRATE JUDGE

    **I.    INTRODUCTION**

Plaintiff Jean Evelyn Harris brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits under Title II of the Social Security Act and social security income under Title XVI of the Social Security Act. Presently before this Court are the parties' pleadings, including Plaintiff's Brief and Statement of Issues in Support of Request for Review, ECF No. 10; the Defendant's Response, ECF No. 11; and Plaintiff's Reply Brief, ECF No. 12.

On April 27, 2015, counsel presented oral argument.  Hr'g Tr., ECF No. 17.  For the reasons which follow, I recommend the relief Ms. Harris seeks to be denied and judgment be entered in favor of Defendant, affirming the decision of the Commissioner.

## II.     BACKGROUND AND PROCEDURAL HISTORY

Ms. Harris was born on August 8, 1972. Administrative R. 39, ECF No. 9. She has an eleventh grade education, Hr'g Tr. 3, ECF No. 17, is able to communicate in English, Administrative R. 39, ECF No. 9, and has past relevant work as certified nurse assistant and residential aide. *Id.*

Ms. Harris seeks review of Administrative Law Judge ("ALJ") John S. Pope's decision dated December 21, 2012. *See id.* at 27–41.[1] The ALJ described the procedural events leading to his decision as follows:

> On September 23, 2010, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on September 23, 2010. In both applications, the claimant alleged disability beginning October 1, 2009. These claims were denied initially on March 31, 2011. Thereafter, the claimant filed a written request for a hearing on May 27, 2011 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). On September 2, 2012, the undersigned held a video hearing (20 CFR 202.9369(c) and 416.1436(c)). The claimant appeared in Philadelphia, PA, and the undersigned presided over the hearing from Chicago, IL. Ronald Malik, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Eric A. Shore, an attorney.

*Id.* at 27.

In his opinion, ALJ Pope determined that Ms. Harris met the Social Security Act's insured status requirements through September 30, 2012. *Id.* at 29. The ALJ further determined that Ms. Harris was not under any disability within the meaning of the Social Security Act at any time from the alleged onset date of October 1, 2009, through the date of the ALJ's decision. *Id.*

---

[1] Ms. Harris filed a timely Request for Review with the Appeals Council. On May 7, 2014, the Appeals Council denied Ms. Harris' request and adopted the ALJ's decision as the Commissioner's final decision. Administrative R. 5–8, ECF No. 9.

Since the alleged onset date, the ALJ found the following severe impairments: degenerative disc disease; fibromyalgia; carpal tunnel syndrome; posttraumatic stress disorder; and bipolar disorder. *Id.* at 29–30.

Considering all of the evidence, the ALJ determined that Ms. Harris had the residual functional capacity ("RFC") to perform light work, except for the following limitations: "claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, humidity, vibration, pulmonary irritants, and hazards; and is limited to simple, routine, repetitive tasks in a work environment with no more than occasional changes." *Id.* at 31.

Ms. Harris requested Appeals Council review, which was denied on May 7, 2014. *Id.* at 5–8.

On August 6, 2014, Ms. Harris filed an action in this Court requesting review of the adverse decision, Compl., ECF No. 3, to which the government answered, Answer, ECF No. 8. Ms. Harris filed a brief and statement of issues in support for request and review, Pl.'s Br., ECF No. 10; the government filed a response in opposition, Def.'s Resp., ECF No. 11; and Ms. Harris filed a reply brief, Pl.'s Reply Br., ECF No. 12. The matter has been referred to me by the Honorable Jeffrey L. Schmehl for Report and Recommendation. Order, ECF No. 14.

### III.  SOCIAL SECURITY DISABILITY LAW

#### A.  Disability Determinations

The Social Security Act authorizes several classes of disability benefits, including disability insurance benefits ("DIB") and supplemental security income ("SSI"). *See* 42 U.S.C. §§ 301–1397. To qualify for benefits, a person must be "disabled" as defined by the statute and its accompanying regulations.

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001) (internal citations omitted); *see also* 42 U.S.C. § 423. A claimant may establish a disability in two ways: (1) by producing medical evidence that the claimant is disabled *per se* by meeting or equaling certain listed impairments set forth in 20 C.F.R. § 404.1525; or (2) by demonstrating an impairment of such severity as to render the claimant unable to engage in any kind of substantial gainful work that exists in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

The Commissioner of the Social Security Administration has promulgated regulations outlining a five-step sequential evaluation process to determine whether a claimant is under a disability. 20 C.F.R. § 404.1520. Following the steps in order, an ALJ's analysis ends if he determines that a claimant is not disabled based upon the current inquiry. *Id.*

At Step 1, the Commissioner determines whether the claimant is engaging in substantial gainful activity. An individual presently working will not be found "disabled" regardless of the claimant's medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b). Step 2 involves evaluating the claimant's impairments and their respective severity. 20 C.F.R. § 404.1520(c). Step 3 requires determining whether the claimant has an impairment or combination of impairments that meets or equals any of the listed impairments found in Appendix 1. 20 C.F.R. § 404.1520(d). Step 4 requires determination of the claimant's RFC and consideration of whether he is capable of performing past relevant work. If the claimant is so able, he will not be considered "disabled." 20 C.F.R. § 404.1520(e). Finally, Step 5 involves determining whether the claimant is capable of performing other work available in the national

economy. 20 C.F.R. § 404.1520(f). *See, e.g., Ramirez v. Barnhart*, 372 F.3d 546, 550–51 (3d Cir. 2004).

The ALJ must resolve any conflicts in the evidence and determine the evidence's credibility and the appropriate relative weight to be given such evidence. *Plummer v. Apfel*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). On appeal, the District Court must accept the ALJ's conclusions unless they are without "obvious basis" in the record. *Torres v. Harris*, 494 F. Supp. 297, 301 (E.D. Pa. 1980), *aff'd*, 659 F.2d 1071 (3d Cir. 1981).

### B. Judicial Review of Disability Decisions

This Court's role on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision. *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). More than a mere scintilla of evidence is required, but the standard may be somewhat less than a preponderance of the evidence. *Id*.

The Court need not reweigh the evidence of record or substitute its own conclusions for that of the ALJ. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). On appeal to this Court, the Commissioner's determinations as to findings of fact and inferences reasonably drawn from the evidence are conclusive if supported by substantial evidence. *See Fargnoli*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

## IV.     THE ALJ'S DECISION

ALJ Pope received medical evidence and heard testimony from Ms. Harris and a vocational expert, Robert Malick.  Administrative R. 47–96, ECF No. 9.

At Step 1 in the evaluation process, the ALJ found that Ms. Harris had not engaged in any substantial gainful activity since October 1, 2009, the alleged onset date of her disability.  *Id.* at 29.

At Step 2, the ALJ found that Ms. Harris suffers from five severe impairments: degenerative disc disease; fibromyalgia; carpal tunnel syndrome; posttraumatic stress disorder; and bipolar disorder.  *Id.* at 29–30.

At Step 3, the ALJ concluded that Ms. Harris's impairments, considered singly and in combination, do not meet or medically equal any of the listed impairments contained in Appendix 1.  *Id.* at 30–31.  ALJ Pope reviewed the entire record and determined that Ms. Harris has the RFC to perform "light work" except for the following limitations: "claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, humidity, vibration, pulmonary irritants, and hazards; and is limited to simple, routine, repetitive tasks in a work environment with no more than occasional changes."  *Id.* at 31–39.

At Step 4, the ALJ found that Ms. Harris was unable to perform her past relevant work experience as a certified nurse assistant or residential aide.  *Id.* at 39.

At Step 5, the ALJ found, considering Ms. Harris's age, education, work experience, and RFC, "there are jobs that exist in significant number in the national economy that the claimant can perform."  *Id.* at 40–41.  The vocational expert Ronald Malick testified that an individual

with Ms. Harris's age, education, work experience, and RFC could access jobs such as small product assembler, wire assembler, or marker. *Id.* at 40; *id.* at 91–92.

Therefore, ALJ Pope found that Ms. Harris was not under a disability as defined by the Social Security Act from her alleged onset date of October 1, 2009, through December 21, 2012, the date of the ALJ's decision. *Id.* at 41.

V.     **DISCUSSION**

   **A.  Parties' Arguments.**

   Ms. Harris alleges the following errors in support of her request for review:

   1. The ALJ erred in failing to discuss or evaluate four of Ms. Harris' Global Assessment of Function ("GAF") scores; and

   2. The ALJ's RFC assessment is not supported by substantial evidence because the record reflects that manipulative limitations were appropriate, but were not included in the RFC.

*See* Pl.'s Br., ECF No. 10; Pl.'s Reply Br., ECF No. 12; Hr'g Tr. 3–7, ECF No. 17; *id.* 12–14.

   The Commissioner responded in opposition, arguing that the ALJ's decision must be affirmed because it is supported by substantial evidence, and specifically:

   1. The ALJ's failure to mention several of Ms. Harris' GAF scores does not warrant remand; and

   2. Substantial evidence supports the ALJ's RFC assessment, and particularly his finding that Dr. Bruce Williams' opinion is entitled to little or no weight.

*See* Def.'s Resp., ECF No. 11; Hr'g Tr. 8–12, ECF No. 17; *id.* at 13–14.

   Ms. Harris filed a reply brief in which she responded to the Commissioner's arguments. Pl.'s Reply Br., ECF No. 12.

   **B.  Substantial evidence supports the ALJ's RFC determination.**

   Ms. Harris contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to overtly discuss five Global Assessment of Functioning ("GAF")

scores[2] assigned to her between 2011 and 2012.  Pl.'s Br. 4–8, ECF No. 10.  Specifically, Ms.

Harris argues that the ALJ erred in not acknowledging and discussing the following four GAF

scores:

- GAF score of 45–50 assigned after a Comprehensive Psychological Evaluation by Mark S. Wagner, Ph.D., of Neuropsychological Services of the Delaware Valley on January 5, 2011, Administrative R. 113, ECF No. 9-4;

- GAF score of 50 assigned after a Comprehensive Biopsychosocial Evaluation by therapist Israel Villafaña of COMHAR Inc. on February 10, 2011, Administrative R. 112, ECF No. 9-2;

- GAF score of 30 assigned upon admission to Temple University Hospital Episcopal Campus on May 11, 2011, Administrative R. 105–06, ECF No. 9-3; and

- GAF score of 60 assigned upon discharge from Temple University Hospital Episcopal Campus by Jessica Kovach, M.D., on May 16, 2011, *id.*

Pl.'s Br. 4–8, ECF No. 10.  Although the ALJ noted Ms. Harris' GAF score of 48 assigned by

psychiatrist J. Herrera, M.D., of Hispanic Community Counseling Services on August 16, 2012,

Ms. Harris argues that he erred in not properly discussing the score's importance.  *Id.*;

Administrative R. 36, ECF No. 9; *see* Administrative R. 1, ECF No. 9-5.  Having reviewed the

---

[2] Prior to 2013, the Global Assessment of Functioning ("GAF") was a numeric scale of one to one-hundred that mental health professionals and physicians used to rate adults' social, occupational, and psychological functioning. The Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* discontinued use of the GAF scale due to "its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM-5 [hereinafter DSM-5] 16 (5th ed. 2013).

GAF scores between 51 and 60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  GAF scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  GAF scores between 31 and 40 indicate "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  Finally GAF scores between 21 and 30 indicate "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM-IV-TR [hereinafter DSM-IV] 34 (4th ed. 2000).

parties' submissions, the administrative record, and the ALJ's decision I disagree that the ALJ committed reversible error in failing to discuss these GAF scores.

Under the regulations, GAF scores do not directly correlate to a determination of whether an individual is or is not disabled under the Social Security Act. *Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d Cir. 2009) ("A GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings, . . . and a GAF score of 45, if credited, would not require a finding of disability."). While a GAF score can assist an ALJ in understanding the claimant's limitations contained in medical professionals' opinions, the actual number itself does little to describe the specific functional limitations caused by the claimant's impairments. *Cooper v. Barnhart*, No. 06-CV-2370, 2008 WL 2433194, at *3 (E.D. Pa. June 12, 2008) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002)). There is no bright-line rule requiring GAF scores to be expressly discussed and analyzed in all cases; instead, courts consider these scores in the overall context of the claimant's medical condition. *Pendergrast v. Colvin*, No. 13-CV-00933, at 13 (W.D. Pa. Sept. 19, 2014). An ALJ need not cite every piece of evidence in the record when rendering his decision. *See Fargnoli*, 247 F.3d at 42 (3d Cir. 2001). Furthermore,

> [T]he GAF scale appears to have fallen into disfavor. "Due to concerns about subjectivity in application and a lack of clarity in the symptoms to be analyzed, the [American Psychiatric Association] abandoned the GAF score in its recently published fifth edition of the Diagnostic and Statistical Manual of Mental Disorders." *Solock v. Astrue*, 2014 U.S. Dist. LEXIS 81809, 2014 WL 2738632, at *6 (M.D. Pa. June 17, 2014). "It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STAT. MANUAL OF MENTAL DISORDERS, DSM-5 16 (5th ed. 2013). In response the Social Security Administration now allows ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; however, a "GAF score is never dispositive of impairment severity," and thus an ALJ should not "give controlling weight to a GAF from a

>treating source unless it is well supported and not inconsistent with other evidence." SSA AM-13066 at 5 (July 13, 2013).[3]

*Id.* at 14.

In this case, the ALJ expressly mentioned only one of the five GAF scores found in Ms. Harris' voluminous medical records. Administrative R. 36, ECF No. 9. While the exact numbers of the other GAF scores were excluded from ALJ Pope's decision, his summary of the medical evidence as to Ms. Harris' mental impairments included many of the medical examiners' observations and opinions. *Id.* at 35–36. Ultimately, the ALJ found that Ms. Harris suffered from the following severe impairments: degenerative disc disease; fibromyalgia; carpal tunnel syndrome; posttraumatic stress disorder; and bipolar disorder. *Id.* at 29–30. The ALJ further determined that Ms. Harris had the RFC to perform light work, except for the following limitations: "claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, humidity, vibration, pulmonary irritants, and hazards; and is limited to simple, routine, repetitive tasks in a work environment with no more than occasional changes." *Id.* at 31.

Specifically as to Ms. Harris' mental RFC, the ALJ accorded great weight to the opinion of state agency psychological consultant Mark Hite, Ed.D., in whose opinion Ms. Harris suffered bipolar and panic disorders. *Id.* at 36–37. ALJ Pope found that "Dr. Hite's opinion is supported by the claimant's intact cognition and adequate concentration during her physiological examination, her ability to interact with family and attend church, and her ability to care for her personal needs." *Id.* at 37. The ALJ gave some weight to the opinion of state agency

---

[3] It should be noted that the ALJ's decision in this case was issued on December 21, 2012—that is, before the release of the DSM-5 discontinuing usage of GAF scores, and before the Social Security Administration's Administrative Message 13066 providing guidance on GAF scores' usage. *See* Administrative R. 27–46, ECF No. 9; DSM-5 16 (5th ed. 2013); SSA AM-13066 at 5 (July 13, 2013). However, given the more recent discussion of the usefulness of a GAF score in the Social Security disability context, I find this information instructive.

psychological examiner Lori Hart, Ph.D., who "opined that claimant can understand simple and detailed job instructions, although her reported fatigue, lack of motivation, and poor attention span would make it difficult for her to carry them out." *Id.* at 36. Dr. Hart found that Ms. Harris "would have a moderately difficult time making decisions, particularly during episodes of mania. . . . She would also be moderately limited in her ability to interact and relate with supervisors and coworkers." *Id.* The ALJ determined that although "Dr. Hart examined the claimant personally, and her examination produced valuable clinical evidence," he nevertheless found that "Dr. Hart's conclusions regarding the claimant's social functioning rely upon her self-reported problems with people, not her presentation at the appointment." *Id.* The record reflects that substantial evidence supports the ALJ's RFC conclusion, and the ALJ's opinion adequately explains why he was unpersuaded that Ms. Harris suffered from more serious limitations. The ALJ properly discussed and assigned an appropriate value to Ms. Harris' GAF scores in formulating the RFC.

I also find that substantial evidence supports the ALJ's determination that Ms. Harris was not entitled to a manipulative limitation to her RFC. Ms. Harris argues that the ALJ inadequately considered her treating physicians' opinions as to her manipulative limitations. Pl.'s Br. 8–13, ECF No. 10; Hr'g Tr. 6–8, ECF No. 17. However, the record reflects that—as is common in such cases—the ALJ in this case was presented with contradictory medical evidence, he considered that evidence and assigned relative weights of those opinions, and reached a conclusion as to an appropriate RFC.

Specifically, given Dr. Elizabeth Kamenar's status and experience as a state agency medical consultant, the ALJ gave great weight to her opinion that Ms. Harris "no evidence of any manipulative limitations." Administrative R. 36, ECF No. 9. The ALJ also considered evidence from treating physician Bruce Williams, D.O. *Id.* at 37. Dr. Williams opined that, in an eight-

hour workday, Ms. Harris could only rarely perform reaching all directions (including overhead); rarely perform handling (gross manipulation); rarely perform fingering (fine manipulation); and never perform feeling (skin receptors). Administrative R. 42, ECF No. 9-4. The ALJ assigned Dr. Williams' opinion little weight because it was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques." Administrative R. 37, ECF No. 9. Specifically, he found that "Dr. Williams' opinion is not supported by the examinations showing that the claimant has 5/5 strength, her MRIs showing only degenerative changes at L5-S1, and her normal nerve conduction studies"; Dr. Williams' "specialty in family practice does not merit particular deference" despite seeing Ms. Harris regularly; Dr. Williams' assigned limitations "simply have no basis in any objective evidence"; and Dr. Williams examined Ms. Harris during the period in which she was recovering from an ankle injury, and his opinion is not consistent with her functioning during that period. *Id.*

The record reveals that the ALJ's credibility assessments are supported by specific findings that explain which evidence the ALJ accepted, which evidence he rejected, and the reasons for those determinations. The ALJ's process and his conclusions are consistent with the Social Security regulations and Third Circuit case law. *See Drejka v. Comm'r Soc. Sec.*, 61 F. App'x 778, 781 (3d Cir. 2003) ("It is precisely because the ALJ is best situated to make credibility determinations that the findings of the ALJ are given deferential review.").

Because the ALJ did not find that a manipulative limitation was appropriate, his hypotheticals to the vocational expert likewise did not need to incorporate that limitation. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant. . . . [T]he ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*. . . .

Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible."). Therefore, the fact that the jobs identified by the vocational expert—small product assembler, wire assembler, or marker—require at least frequent fingering is immaterial. *See* Administrative R. 40, ECF No. 9; *id.* at 91–92.

## RECOMMENDATION

Consistent with the discussion above, it is recommended that the relief sought in Plaintiff's Request for Review be DENIED, and that judgment be entered in favor of Defendant, affirming the decision of the Commissioner of Social Security. Plaintiff may file objections to this Report and Recommendation within fourteen days after receiving a copy of it. *See* Fed.R.Civ.P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. *See Leyva v. Williams,* 504 F.3d 357, 364 (3d Cir. 2007).

S/M. FAITH ANGELL_____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

By email to:   Hon. Jeffrey L. Schmehl
              Michael Patrick Boyle      mpboyle.law@verizon.net
              Stuart Weiss               stuart.weiss@ssa.gov